Dear Representative Scalise:
This office is in receipt of your letter dated November 29, 2000, requesting an opinion regarding the legality of "amusement" devices operated in a "tournament play" mode referencing a letter enclosed from Mr. Jack Boasberg, of New Orleans Novelty Company, Inc. dated November 13, 2000.
It should be noted that Mr. Boasberg's letter does not provide sufficient information regarding the particular games(s) operated in "tournament play" mode that would allow this office to render an opinion as to the legality of such devices.
Mr. Boasberg's letter of November 13, 2000, does specifically refer to "Incredible Technologies Golden Tee Fore (Golf Game)" in a list of six manufacturers and games (devices).
This office previously received a letter dated March 29, 2000, and attachments from Mr. Ronald W. Morrison, Attorney at Law, on behalf of New Orleans Novelty Company, Inc. requesting a "written statement" as to the legality of Golden Tee Fore. Mr. Morrison, at our request, provided additional information and literature including the ITNet Procedures Manual (Incredible Technologies, Inc.) by letter dated April 25, 2000.
Based upon the information received, this office, while refraining from rendering an Attorney General Opinion, responded to Mr. Morrison in a letter dated July 14, 2000, that: "it appears that the Golden Tee golf game device when operated in "tournament" mode as described in the literature, may constitute an illegal gambling device under La. R.S. 15:31
and further that operation in such manner could be construed to constitute `gambling' prohibited by La. R.S. 14:90."
In addressing and responding to your official request for an Attorney General Opinion, this office will consider the information previously received on behalf of New Orleans Novelty Company, Inc. as an accurate description of the method and manner of operation for Incredible Technologies, Inc.'s Golden Tee Fore in "tournament play" mode.
Golden Tee Fore is an electronic video golf game which operates basically as follows:
In "Regular Play" mode, an individual plays the game by himself. The machine is not interfaced with other devices and no prizes are awarded (except at individual locations where a "Hole-in-One" award is offered).
In "Skins Play" mode, two or four players play on each hole of the golf game. The machine is not interfaced with other devices and no prizes are awarded.
In "Tournament Play" mode, a number of players compete against each other in an online tournament. Prizes are predetermined and are not based on a percentage of entry fees or the number of participants. An example of prizes awarded in a particular tournament were: $2500 for 1st, $2000 for 2nd, $1500 for 3rd, $1000 for 4th, $750 for 5th and lesser prizes in descending order.
Entry fees as described in the ITNet Procedures Manual for "Regular Play" ranged from $0.75 for 3 holes to $3.00 for 18 holes. "Tournament Play" entry fees were stated to be considerably higher, $4.00 for 9 holes and $7.00 for 18 holes.
The ITNet Procedures Manual contained a breakdown of entry fee distribution between IT and the location operating the device. In "Regular Play" the manufacturer, IT would not receive a percentage of the entry fees, however in "Tournament Play", IT would receive a share. For example in an 18 hole tournament game, the $7.00 entry fee would be divided $3.50 to the location and $3.50 to IT. All prizes are paid by IT.
The relevant statutory provisions are La. R.S. 15:31, 27:44 (24) and14:90. See also La. R.S. 27:205 (32).
La. R.S. 15:31 provides in part:
 A. All law enforcement officers of municipal police forces, sheriffs' departments, and the division of state police are hereby authorized and empowered and it is made mandatory and compulsory on their part to confiscate and immediately destroy all gambling devices or machines used for gambling that come to their attention.
 * * *
 B. As used in this section the term "gambling device" means:
 (1) any slot machine; or (2) any machine, mechanical or electronic device of any sort whatsoever with a cash automatic payout device; or (3) a pinball or other ball machine, mechanical or electronic device equipped with a mechanism to release the number of free games or replays and a mechanism to record the free games or free plays so released.
"Slot machine" is not defined under La. R.S. 15:31, however, La. R.S. 27:44 (24) provides:
 (24) "Slot machine" means any mechanical, electrical, or other devices, contrivance or other machine, which, upon insertion of a coin, token, or similar object therein or upon payment of any consideration whatsoever, is available to play or, operate the play or operation of which, whether by reason of the skill of the operator or application of the element of chance, or both, may deliver or entitle the person playing or operating the machine to receive cash, premiums, merchandise, tokens, or anything of value, whether the payoff is made automatically from the machine or in any other manner.
La. R.S. 14:90 provides in part:
 A. (1)(a) Gambling is the intentional conducting, or directly assisting in the conducting, as a business, of any game, contest, lottery, or contrivance whereby a person risks the loss of anything of value in order to realize a profit.
It is assumed that Golden Tee Fore is not intended to be permitted and regulated under the provisions of La. R.S. 27:41 et seq., the Louisiana Riverboat Economic Development and Gaming Control Act, La. R.S. 27:201 et seq., the Louisiana Economic Development and Gaming Corporation Law La. R.S. 27:301 et seq., the Video Draw Poker Devices Control Law, La. R.S. 27:351 et seq., the Louisiana Pari-mutuel Live Racing Facility Economic Redevelopment and Gaming Control Act, La. R.S. 33:4861.1 et seq., the Charitable Raffles, Bingo and Keno Licensing Law, or R.S. 47:9000
et seq., the Louisiana Lottery Corporation law.
The device in question operated in "Tournament Play" mode appears to meet all requirements of a "slot machine" as defined at La. R.S. 27:44
(24). The term "slot machine" specifically includes the language: "whether by reason of the skill of the operator or the application of an element of chance, or both". Thus the fact that the device may in fact be a "game of skill" is irrelevant for purposes of the definition of an "illegal gambling device" and accordingly games such as Golden Tee Fore would not appear exempt from the provisions of La. R.S. 15:31.
Regarding the applicability of 14:90, should be noted that the cost of operating the Golden Tee Fore device in "Tournament Play" mode is significantly higher than for "Regular Play" ($7.00/$3.00), therefore the consideration element or "risk of loss" in order to realize a profit, appears clearly evident. In other words, the player is playing the same video golf game, yet for additional compensation is entitled to play in a tournament with the opportunity to win a cash prize or "realize a profit". Further as reflected in the documentation, IT receives half of each "Tournament Play" fee and is responsible for payment to the winning players. Therefore, the games are apparently being conducted "as a business" by IT.
The existence vel non of an element of skill in a game is not dispositive of the issue of whether an activity constitutes "gambling". Accordingly, operation of the device as proposed in the documentation would appear to further constitute "gambling" in violation of La. R.S.14:90.
This Opinion only addresses the Golden Tee Fore video golf game operated in "Tournament Play" mode in accordance with the literature and documentation referred to herein. This office has no information regarding the other games and devices referred to in Mr. Boasberg's letter of November 13, 2000.
Hopefully this Opinion addresses your concerns. Please feel free to call if this office may be of further assistance.
Sincerely,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 BY: ________________________ Thomas A. Warner, III Assistant Attorney General